IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  3:12cr31/MCR/EMT
                                                    3:15cv38/MCR/EMT

KARDALE LAMAR BLACK.

---

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant's amended "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 180).   The Government filed a response (ECF No. 183), and Defendant filed a reply (ECF No. 192).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

PROCEDURAL BACKGROUND

Defendant was indicted in this case on April 19, 2012, in a three-count indictment (ECF No. 1).    He was charged with carjacking in violation of 18 U.S.C. §§ 2119 and 2 (Count One), using a firearm during and in relation to and in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Two), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Three) (ECF No. 1).[1]    Defendant was arrested on April 25, 2012, and made an initial appearance the same day.    Then-Assistant Federal Public Defender Jennifer Anne Hart was appointed to represent him (ECF No. 28).

On May 22, 2012, Ms. Hart filed a motion requesting that Defendant be examined by a psychiatrist within the Bureau of Prisons ("BOP") to determine his competency to stand trial and mental state at the time of the offenses (ECF No. 42). The motion was granted, and Defendant (who had been in custody since his arrest) was committed to the custody of the Attorney General for placement in a suitable BOP facility, where he would undergo the requested psychiatric examinations (ECF

---

1  Defendant was later charged in a superseding indictment with the same three offenses (ECF No. 57).    The new indictment merely corrected a scrivener's error relating to the date of the offense alleged in Count Three (*compare* ECF No. 1 *with* ECF No. 57; *see also* ECF No. 168 at 6).

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

No. 46; *see also* ECF No. 64 (Amended Order of Commitment for Psychiatric Evaluation)).    Also on May 22, Ms. Hart moved to withdraw, citing a breakdown in communications between her and her client, as well as her client's unwillingness to work with her (ECF No. 43).

On September 27, 2012, the district court denied Ms. Hart's motion to withdraw without prejudice (ECF No. 78).    The court noted that in the months that had passed since the motion to withdraw was filed, Defendant had undergone an evaluation at FDC Miami and was en route for return to this district (*id*.).    The court directed defense counsel to attempt another meeting with Defendant to discuss the proceedings in the case (*id*.).    On October 24, 2012, the court—noting it had been advised that Defendant had been returned to the district—entered a second order directing counsel to meet with Defendant and to advise the court whether Defendant intended to proceed to trial or if further proceedings were required (ECF No. 92).

On November 8, 2012, the district court arraigned Defendant on the superseding indictment and conducted a competency hearing (*see* ECF Nos. 100 (minute entry) & 168 (transcript of the proceedings)).[2]    During the hearing Ms.

---

2 Prior to the hearing of November 8, two reports had been filed concerning the psychiatric evaluations of Defendant by Rodolfo A. Buigas, Ph.D., with the BOP, one which addressed Defendant's competency (ECF No. 76), and one which addressed Defendant's sanity at the time

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

Hart stated that she concurred "with the ultimate conclusion that Mr. Black is competent to go forward," though she expressed disagreement with portions of the competency report prepared by Dr. Buigas (ECF No. 168 at 3). More specifically, Ms. Hart stated as follows:

> I . . . have some issues with some of the findings by Dr. Buigas. I noticed that he did not include any scores in his report. And so I obtained from Dr. Larson, Dr. James Larson, some prior psychiatric evaluations that he had conducted on Mr. Black, and I also asked Dr. Larson to review Dr. Buigas's report.
>
> And so ultimately, after those discussions and review of the multiple reports, we've concluded that he is competent to proceed.
>
> One of things that I would take issue with is Dr. Buigas's conclusion that Mr. Black was malingering. I would submit to the Court the reports from Dr. Larson that found Mr. Black to be retarded -- mildly retarded in an evaluation that was conducted in 2004 and in a subsequent evaluation in 2008 and another evaluation in 2009. Those evaluations discuss that Mr. Black has at times been found incompetent and then rendered competent after some training.
>
> Taking all of these things together, I believe, again, that Mr. Black is competent to go forward, although I do believe that there's going to be some mental health issues that may at some point become relevant to sentencing and perhaps even relevant to certain theories of defense, but we would concur with the ultimate conclusion that he is competent to go forward.

of the offenses (ECF No. 77). Dr. Buigas opined that Defendant was competent to proceed and criminally responsible for his actions. The hearing of November 8 addressed only Defendant's competency, evidently because there were no concerns about Dr. Buigas' opinion regarding sanity (*see* ECF No. 168).

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

> I would note for the record that one of the reasons that I had asked for the competency evaluation was because Mr. Black ceased discussing the case with me.
>
> And I had asked this Court to withdraw from the case. This Court denied that motion without prejudice to me bringing that motion again.
>
> And I can advise the Court that that relationship, I believe, is repaired, as it were, and that Mr. Black is endeavoring to communicate with me better. So I do see that situation has resolved itself, and I don't believe or don't expect to be filing any further motions regarding that issue.

(ECF No. 168 at 3–4).

Ms. Hart reiterated that although she took issue with some of Dr. Buigas' findings, she did not disagree with his ultimate conclusion that Defendant was competent to proceed (ECF No. 168 at 5). The district court then adopted the conclusions of Dr. Buigas, declared Defendant competent to proceed, arraigned Defendant on the superseding indictment, and scheduled Defendant's jury trial for December 19, 2012 (*id*. at 5–7, 9; *see also* ECF Nos. 100–101). At Defendant's request, the trial was later continued to Monday, January 7, 2013 (ECF Nos. 108–111).

On or about January 3, 2013, the district court was advised that Defendant wished to enter a plea, and the court referred the matter to the undersigned to conduct

Rule 11 guilty plea proceedings (ECF No. 119).   With Defendant's consent, he entered a plea before the undersigned on Friday, January 4, 2013 (ECF Nos. 122–125; *see also* ECF No. 161 (transcript of plea proceedings)).   Although there was no written plea agreement, Defendant entered guilty pleas to Counts One and Two of the superseding indictment, with an understanding that the Government would move to dismiss Count Three at sentencing (*see, e.g.*, ECF No. 161 at 13).

Prior to the plea proceedings, the undersigned reviewed the docket and took note of Defendant's evaluation by Dr. Buigas, Dr. Buigas' findings, and the district court's determination of November 8, 2012, that Defendant was competent to proceed.[3]   During the plea proceedings, the undersigned asked Defendant if he had ever been treated for any type of mental illness (ECF No. 161 at 5).   Defendant responded that he had, after which Ms. Hart summarized his history of mental health issues, as well as past findings of mental deficiencies, the reason she had requested the BOP evaluation, and the results of the BOP's evaluation (*id*. at 5–8).   Ms. Hart went on to state that she had previously asked Dr. Larson to review Dr. Buigas'

---

[3] The transcript of the competency hearing (ECF No. 168) had not been filed at the time of Defendant's plea; thus, the undersigned knew only of the district's court's ultimate finding as reflected in the minutes of the hearing (ECF No. 100), not of any statements made by Ms. Hart or others during the competency proceeding.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

report, "[a]nd while he disagreed with some of the statements in that report, he ultimately concurred with the final assessment that Mr. Black was competent to go forward" (ECF No. 161 at 7).   Ms. Hart additionally advised the undersigned that Defendant's mental condition had been "essentially the same" since he had been declared competent by the district court (*see id*. at 8–9).   Ms. Hart noted that although there had been some "struggle[s]," she and her client had engaged in ongoing communications since his return to this district and/or his competency hearing; that they were able to communicate effectively; and that she believed Defendant understood the "nature of these proceedings and what's going on" (*see id*. at 7–9).   The undersigned then asked Defendant about any medications he was taking.   He advised that he was taking Zyprexa (and had been at least since his return to this district from the BOP), that prior to the plea he had taken the Zyprexa at the right time and in the correct dosage, and that the medication did not affect his ability to understand anything that had been said in the plea proceedings (*see id*. at 9–10).

Next, the undersigned reviewed with Defendant the rights he would be relinquishing by pleading guilty, the charges against him, and the potential penalties he faced.   After Defendant's plea, the undersigned ordered a Presentence

Investigation Report ("PSR"), advised Defendant that she would recommend that the district court accept his guilty plea, and scheduled sentencing for March 20, 2013 (ECF No. 161 at 20). The district accepted Defendant's guilty plea on January 7, 2013 (*see* ECF Nos. 125–125).

A draft PSR was disclosed to the parties on February 15, 2013 (ECF No. 129); the final PSR was filed on April 12, 2013 (ECF No. 137). The final PSR calculated Defendant's total offense level for Count One as 22. This included a base offense level of 20, a two-level upward adjustment because the offense involved carjacking, a two-level upward adjustment for Defendant's role in the offense, and a two-level reduction for acceptance of responsibility [4] (ECF No. 137, PSR ¶¶ 19–28). Defendant's criminal history category was III, as most of his criminal conduct occurred while he was a juvenile and was thus unscored (ECF No. 137, PSR ¶¶ 31–41). The applicable guidelines range for Count One was 51 to 63 months. Count Two carried a mandatory consecutive sentence of seven years to life imprisonment (ECF No. 137, PSR ¶ 69).

---

[4] Defendant was not entitled to a three-level reduction due to the late entry of the guilty plea, three days before trial (ECF No. 137, PSR ¶¶ 16, 27).

The PSR also detailed a history of juvenile delinquency, mental illness, and substance abuse, beginning from Defendant's birth to a drug addicted mother.   At the conclusion of the report, the probation officer identified two factors that might warrant a departure from the guidelines range.   First, the violent nature of Defendant's extensive criminal history might warrant an increase of his criminal history category pursuant to U.S.S.G. § 4A1.3 (ECF No. 137, PSR ¶ 89).   Second, Defendant's mental health condition might justify a decrease in the criminal history category pursuant to U.S.S.G. § 5K2.13, if Defendant committed the offense while suffering from a significantly reduced mental capacity which contributed substantially to his commission of the offense (ECF No. 137, PSR ¶ 90).   However, the probation officer also noted that there were situations in which a downward departure would nonetheless not be warranted, such as a need to protect the public because of either the facts of the offense conduct or the Defendant's criminal history (ECF No. 137, PSR ¶ 91).

Ms. Hart filed an objection to the PSR, contending that Defendant was not an organizer or leader and thus the two-level enhancement for his role in the offense was not applicable (ECF No. 136).   Ms. Hart also noted that although Defendant had only one objection to the PSR, she was "concerned about the information

regarding [Defendant's] mental health history" (*id.*).    She noted that the PSR revealed a "lengthy history of mental health issues"; showed that Dr. Larson had previously evaluated Defendant in 2004 and 2008, and that on each occasion he deemed Defendant to be mentally retarded; and reflected that Defendant had previously been deemed incompetent to proceed "in legal proceeding [sic]" (*id.*). Ms. Hart continued by explaining that, in light of Dr. Larson's former findings:

> [We] requested that Mr. Black be evaluated by the BOP.    The BOP evaluator concluded that Mr. Black was competent to stand trial, but he offered little other useful information.    I was particularly concerned that the doctor never bothered to speak with me about Mr. Black nor did he request any of the mental health records that we possessed.
>
> While reviewing Mr. Black's juvenile records at [the U.S. probation office], my concern that the BOP evaluation had been deficient, was increased.    Those records revealed a troubled child, born to a crack addict, passed from home to home, and often neglected by caregivers. . . .    [One of the caregivers, his sister,] used to throw [Defendant] out of the house and made him sleep in the yard when she had friends at the house.
>
> Due to my increasing concerns, I asked Dr. Larson to review the BOP mental evaluation report, as well as some additional mental health records I had obtained from Lakeview, and to render an opinion regarding the validity of the BOP evaluation.

(ECF No. 136 at 2).    Ms. Hart attached to her objection a letter from Dr. Larson, dated March 14, 2013, in which he criticized or questioned the validity of Dr.

Buigas' testing methods and opinions and ultimately opined that Defendant ought to be reevaluated (*see* ECF No. 136-2).

Sentencing, which had originally set for March 20, 2013, was continued until April 23, 2013, upon defense motion (ECF Nos. 128, 131–133). On April, 23, however, after the proceeding began, the district court ordered Defendant committed for a second psychological evaluation based on the concerns raised by Ms. Hart in her objections to the PSR, as well as the district court's observation that Dr. Larson—in his letter of March 14, 2013—expressed "serious reservations about the BOP's evaluation and ultimate conclusion of malingering" (ECF Nos. 138, 139; *see also* ECF No. 164 (transcript of the proceedings)).[5]

The district court noted that had it known that there were reservations or concerns about the BOP's evaluation, it "would not have accepted the guilty plea, or adopted the recommendation of the magistrate judge as to the guilty plea" (ECF No. 164 at 2). The court stated that it might have reconsidered the guilty plea had it known of Dr. Larson's opinion sooner, and it "certainly wouldn't have scheduled

---

[5] The Government noted later in the proceeding that defense counsel "hasn't suggested that she's had some observations herself or heard or seen anything that would suggest to her that he's incompetence [sic]" (ECF NO. 164 at 9). Defense counsel did not contradict this representation.

the sentencing" for that date (ECF No. 164 at 2–3).    In deciding to order additional testing, the court noted that it did not want to find itself in a position "down the road on a 2255" trying to determine Defendant's competency at the time of either the plea or sentencing (ECF No. 164 at 7).    The court initially was not inclined to send Defendant back to the BOP for evaluation, but ultimately determined that this would be the best course of action in light of the Government's opposition to Dr. Larson, who had also since retired (ECF No. 164 at 4–5, 9–10).

Defendant again appeared before the district court for a competency hearing and sentencing on September 27, 2013 (ECF No. 165).    The second examiner's report also concluded that Defendant was competent to stand trial, albeit for different reasons than the first (*see* ECF No. 140).    The court noted that Dr. Carrie Schlessinger opined that Defendant suffered from a mental disease or defect, but that this did not render him unable to understand the proceedings or assist in his defense (ECF No. 165 at 2).    Neither defense counsel nor the prosecution objected to or challenged Dr. Schlessinger's findings, and the court found Defendant competent to proceed to sentencing (*id*. at 3).    There was no specific mention of his competence at the time of the plea.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

With respect to the sentence, Defendant argued that due to the Supreme Court's decision in *Alleyne*, the statutory mandatory minimum sentence on Count Two should be five rather than seven years. The Government conceded the point (ECF No. 165 at 4–5). As previously noted, Defendant objected to the two-level enhancement for his purported role as a leader/organizer, and the Government also conceded this objection was well taken (ECF No. 165 at 6–7). The revised guidelines range was 41 to 51 months. Finally, the court heard testimony and argument as to whether it was Defendant or one of the co-defendants who physically possessed the gun during the carjacking (ECF No. 165 at 9–40).

The court stated that Defendant's criminal history category of III substantially underrepresented the seriousness of his prior criminal history, and noted the need to protect the public (ECF No. 165 at 44–46). It departed upward from the guidelines and imposed a sentence of 63 months as to Count One and a consecutive 120-month sentence on Count Two for a total of 183 months' imprisonment (ECF No. 165 at 46–47). The Government then moved to dismiss Count Three of the indictment (ECF No. 165 at 47). Defendant objected to the sentencing disparity between his

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

sentence and that of his co-defendants,[6] and to the departures on each of the counts (ECF No. 165 at 50–51).

Defendant appealed, arguing for the first time that the district court improperly weighed his criminal history against the criminal histories of his co-defendants without providing him advance notice of this.   He also argued that his above-guidelines sentences were substantively unreasonable in light of the mental and intellectual impairments which have always been a major cause of his unlawful conduct.   The appellate court found no error, and that the sentences were procedurally and substantively reasonable.

In the present motion, Defendant separates his claims into four grounds for relief.   These claims contain scant factual or legal argument.   The Government filed a response in opposition to the motion as filed.   Defendant then filed a reply in which he significantly expanded upon several of his claims.   Despite the expansion of his claims, no further response was required from the Government.

## ANALYSIS

### General Standard of Review

---

[6] Co-defendant Marquise Demetris Jenkins received a sentence of 57 months on Count One and 84 months on Count Two, for a total of 141 months, and co-defendant Malcom Mahummed Wright was sentenced to 64 months on Count One and 84 months consecutive on Count Two.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340,

1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, it cannot

be re-litigated in a collateral attack under section 2255.    *Nyhuis*, 211 F.3d at 1343

(quotation omitted).    Broad discretion is afforded to a court's determination of

whether a particular claim has been previously raised.    *Sanders v. United States*,

373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual

allegations . . . or supported by different legal arguments . . . or couched in different

language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct

appeal, issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred.

*Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998);

*McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).    An issue is

"'available' on direct appeal when its merits can be reviewed without further factual

development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).

Absent a showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the defendant

establishes (1) cause for not raising the ground on direct appeal, and (2) actual

prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.   *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two part test also applies to guilty pleas.   *Lafler v. Cooper*, 566 U.S.

156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).    A defendant

will be required to show that but for counsel's errors, he would not have pleaded

guilty and would have instead insisted on proceeding to trial.    *Id.* at 163 (quoting

*Hill*, 474 U.S. at 59).    A defendant's "after the fact testimony concerning his desire

to plead, without more, is insufficient to establish" prejudice.    *Pericles v. United*

*States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United States*, 930

F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir.

2015).    A defendant must "convince the court that a decision to reject the plea

bargain would have been rational under the circumstances."    *Padilla v. Kentucky*,

559 U.S. 356, 372 (2010).    In applying *Strickland*, the court may dispose of an

ineffective assistance claim if a defendant fails to carry his burden on either of the

two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316,

1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)

("[T]he court need not address the performance prong if the defendant cannot meet

the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for*

*Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not

ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have

acted in the circumstances as defense counsel acted.    *Dingle*, 480 F.3d at 1099;

*Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's

decision appears to have been unwise in retrospect, the decision will be held to have

been ineffective assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams v.*

*Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed

the question as not whether counsel was inadequate, but rather whether counsel's

performance was so manifestly ineffective that "defeat was snatched from the hands

of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Regardless of how the standard is framed, under the prevailing case law it is

abundantly clear that a moving defendant has a high hurdle to overcome to establish

a violation of his constitutional rights based on his attorney's performance.    A

defendant's belief that a certain course of action that counsel failed to take might

have helped his case does not direct a finding that counsel was *constitutionally*

*ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records

conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C.

§ 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301

(11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop−Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

<u>Ground One</u>

Defendant contends that because the court never made a factual finding as to which of the co-defendants actually wielded the firearm, he is "actually innocent" of aiding and abetting. Thus, he claims, the court erred in sentencing him under

§ 924(c).    A claim of district court error, which could have been raised on appeal, is procedurally barred.

In his reply, Defendant alleges, for the first time, that counsel was constitutionally ineffective with respect to this issue (ECF No. 192 at 2).    He further alleges that his plea was unintelligent and unknowing because neither he, nor his attorney, nor even the court, understood the elements needed to convict under § 924(c).    He claims that neither the factual basis for the plea, nor the plea allocution informed him of the true nature of the charges.

Defendant's reliance on *Rosemond v. United States*, 134 S. Ct. 1240, 1243 (2014) in support of his claim is misplaced.    In *Rosemond*, the Supreme Court held that to establish a violation of aiding and abetting a § 924(c) offense, the Government must prove that the defendant actively participated in the underlying drug trafficking crime with advance knowledge that a confederate would use or carry a gun during the crime's commission.    The factual basis for Defendant's plea establishes this. It states "the Defendant and his two co-defendants planned to carjack someone with the knowledge that a firearm would be used in the carjacking" (ECF No. 123 at 1). Defendant acknowledged under oath during the plea proceedings that he had signed and gone over the document with his attorney, and that the facts in the written factual

basis were "true and correct" (ECF No. 161 at 13–14).   Therefore, a finding as to which co-defendant actually physically possessed the firearm was unnecessary. Defendant was informed by the undersigned during the original plea proceeding, and he affirmed that he understood, that even if he was not the person that wielded, or waved, or held the gun, he could still be found guilty based on aiding and abetting (ECF No. 161 at 15).   Defendant also stated under oath that Ms. Hart read the entire factual basis to him, as well as the elements of the offenses to which he was pleading (which were included in the factual basis), and he stated that he "understood every word that she read to [him]" (*id*. at 14–15).   "Aiding and abetting" is defined on page three of the factual basis (*see* ECF No. 123 at 3).

The assertion in Defendant's reply—that "had he been dispoed [sic] to the elements of aiding and abetting to 924(c) then he would have went to trial and never given a 'factual statement'" (ECF No. 192 at 6)—does not outweigh his prior sworn statements to the court.

In summary, Defendant's assertions that he did not understand the true basis for the charges, or the elements of the offenses, are unsupported by the record. Counsel was not constitutionally ineffective for her failure to raise a meritless claim to the factual basis for his conviction on Count Two.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

Ground Two

Defendant next contends that the district court abused its discretion in determining that Dr. Larson's psychiatric evaluation was "incompetent" (ECF No. 180 at 5).    Defendant notes that Dr. Larson had previously found him to be mentally retarded and incompetent to stand trial, and suggests that it was improper for the court to disregard this finding, despite two subsequent evaluations by BOP which found to the contrary.

Actually, the record reflects that Dr. Larson did not render an opinion about the ultimate issue of Defendant's competency to stand trial in this case.    Rather, Defendant's attorney had concerns about the BOP evaluation and the information revealed in the PSR.    In light of these concerns she requested that Dr. Larson review the competency evaluation performed by the BOP in conjunction with other mental health records, including Dr. Larson's own previous evaluations (*see* ECF No. 136-2 at 1–4).    Dr. Larson's opinion was that the BOP's report was compromised and did not provide a balanced view of Defendant's situation because the Government evaluators "failed to obtain adequate third-party information" and did not discuss with counsel her "observations and concerns about [her] client's functioning" (ECF No. 136-2 at 2).    Dr. Larson's letter reflects his position that he "cannot at this time

suggest a determination about [Defendant's] competency without reevaluating him," and he suggests that defense counsel have the Government reevaluate Defendant after they have obtained third-party information, including counsel's observations (ECF No. 136-2 at 4). This is precisely what happened. Defendant's suggestion that the court found Dr. Larson's evaluation to be "incompetent" mischaracterizes the record, and Defendant is not entitled to relief.

In his reply, Defendant's raises an entirely new and different claim in his second ground for relief (ECF No. 192 at 8). He asserts that the district court erred in departing from the guidelines in Count Two without offering specific reasons in support of its departure.

A claim of district court error, of course, is procedurally barred. In the "conclusion" portion of this ground for relief, following a two-page, single-spaced explanation, Defendant maintains that "reasonable counsel would have objected as to why the court gave an upward departure" and that "counsel's performance was deficient" (ECF No. 192 at 10).

Defendant acknowledges that the guidelines departure as to Count One was done correctly, in that the court noted that the criminal history category did not adequately reflect the seriousness of his past criminal conduct or the likelihood of

recidivism.    He maintains, however, that the court was also obliged to provide a similar explanation for its departure as to Count Two.

The court announced the sentence that would be imposed with respect to both Counts One and Count Two after it recounted Defendant's criminal history in some detail (ECF No. 165 at 44–47).    After indicating that Defendant would be sentenced to a total term of 183 months, the court said "well, I've stated the basis for the sentence.    I don't need to say any more than that" (ECF No. 165 at 47).    A reasonable inference, then, is that, in the court's mind, the recitation of Defendant's past criminal history and the fully articulated public safety concerns applied to both components of Defendant's sentence.    Thus, regardless of Defendant's disagreement with the sentence imposed, the court's reasons were stated.    Counsel was not constitutionally ineffective for not raising an objection suggesting otherwise.

Ground Three

Defendant next contends that his attorney was constitutionally ineffective because she did not challenge the conclusion of BOP Forensic Psychologist Dr. Kari Schlessinger that he was competent to stand trial, particularly given the conflict with Dr. Larson's previous report.    He also notes that counsel stated on the record at the

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

April 2013 sentencing proceeding that she believed her client was not mentally competent, but changed her mind without explanation at the September proceeding.

Defendant's recollection of counsel's remarks is not accurate.   As noted above, it was Ms. Hart's concern about the first BOP evaluation, dated September 12, 2012, combined with the information that was revealed in the draft PSR, disclosed on February 15, 2013, that led her to seek another opinion from Dr. Larson. Ms. Hart did not specifically explain the details of her reasons for doing so during the April proceeding, although she had previously provided an explanation in her objections to the PSR.   She indicated during the April proceedings, though, that she had information that she could have given to the first BOP evaluator (Dr. Buigas) had she spoken to him before he conducted the evaluation.   With respect to Defendant's recent behavior, Ms. Hart said that she noticed a difference in her client, particularly with respect to his desire to communicate with her, depending upon whether he was receiving his antipsychotic medication.   The medication, Zyprexa, was discontinued when Defendant was found to be "hoarding" it in his cell. Counsel offered her "lawyerly, not doctorly, observations of his behavior" at the April 2013 proceeding, and said that Defendant "was not communicating as well

today" (ECF No. 164 at 12).    She also pointed out that Defendant's red jumpsuit reflected the unit he had been placed in at the jail due to the issues he was having with other inmates.    Ms. Hart opined that this behavior also was affected by the lack of medication.    She never directly stated that her client was incompetent, and did not contradict Mr. Knight, the Assistant United States Attorney, when he said that Ms. Hart had not suggested that she personally had not observed or heard anything that would suggest that her client was incompetent (ECF No. 164 at 9).

Defendant is correct that at the September 2013 sentencing proceeding neither counsel challenged the conclusion of the second BOP evaluation, namely, that Defendant was competent to proceed despite suffering from a mental disease and a mental defect (ECF No. 165 at 2–3).    The lack of challenge does not establish counsel's ineffectiveness, as the record reflects valid reasons for this.

At the April sentencing, the court directed defense counsel to compile all of the information she had "as well as a written communication from you based upon your observations of your client over the course of the past—it's been the past many months—and put all of that together in a nice neat package for the BOP, and invite them to contact you should they have any further questions about Mr. Black" (ECF No. 164 at 13).    Presumably Ms. Hart complied with this directive.    Furthermore,

Dr. Schlessinger's report reflects that she reviewed an exhaustive list of documents, including three past psychological assessments and evaluations performed by Dr. Larson and a letter he sent to counsel in March of 2013 (ECF No. 140 at 2–3).    The report also reflects "collateral phone interviews" with Ms. Hart and AUSA Ed Knight (ECF No. 140 at 2).    Therefore, the second assessment was undeniably more complete than the prior BOP assessment, and as such addressed, at least in part, counsel's concerns (*see* ECF No. 136).    Furthermore, Defendant has not identified a specific viable and meritorious challenge to Dr. Schlessinger's report, other than to express his obvious disagreement with her conclusion.

Defendant's suggestion that counsel was ineffective for not moving for a *Daubert*[7] hearing is without merit.    The purpose of a *Daubert* hearing is to assess the admissibility of expert testimony.    "In determining the admissibility of expert testimony under Rule 702, district courts must consider whether the expert can testify competently on the areas he intends to discuss, whether the expert's methodology is sufficiently reliable, and whether the expert's testimony, through the application of his scientific, technical, or specialized expertise, will assist the trier of

---

[7] *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).    Under *Daubert*, the trial court must determine whether an expert's testimony is based on reasoning or methodology that is scientifically valid and applicable to the facts at issue.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

fact to understand the evidence." *United States v. Jayyousi*, 657 F.3d 1085, 1106 (11th Cir. 2011) (citation omitted). Again, Defendant suggests no basis for a challenge to either Dr. Schlessinger's credentials or her report.

Furthermore, when the judge is the finder of fact, there is less concern about an expert with insufficient qualifications or "dumping a barrage of questionable scientific evidence on a jury." *Allison v. McGhan Med. Corp.,* 184 F. 3d 1300, 1310 (11th Cir. 1999). When the court serves as both the gatekeeper of the evidence and the finder of fact, such as at sentencing, a *Daubert* hearing is not required before the court hears and evaluates the expert testimony. *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005). Otherwise stated, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Brown*, 415 F.3d at 1269. The court can hear the evidence and make its own reliability determination as to the expert testimony before deciding whether it should be accepted or rejected. Counsel was not constitutionally ineffective for not filing a motion for a *Daubert* hearing.

Defendant also asserts that his plea was not made knowingly and intelligently (ECF No. 180 at 7). The only basis for this appears to be his belief that he was incompetent to stand trial. However, the record of the change of plea proceeding

which took place on January 4, 2013, reflects a thorough colloquy (ECF No. 161). The undersigned specifically noted that she was aware that Defendant previously had a competency hearing before the district court and that he had been deemed competent to proceed (*id*. at 8).   Armed with prior knowledge that Defendant had mental health issues, the undersigned intentionally delved deeply into those issues during the plea colloquy, discussed the matter with both Defendant and counsel, and offered additional explanation to Defendant before concluding that he had made his decision to plead guilty freely, voluntarily and knowingly, with the advice of an attorney with whom he indicated he was satisfied (ECF No. 161 at 20).

The plea proceeding thus satisfied the core concerns of Rule 11.   The court did not then, and does not now, have reason to believe that the plea was anything other than voluntary.   Defendant's conclusory assertion to the contrary does not entitle him to relief.

In Defendant's reply, he asserts for the first time that counsel was constitutionally ineffective because she failed to retain an independent mental health examiner (ECF No. 192 at 11).   He asserts that "counsel did retain services for the second evaluation but not the third and other subsequent evaluation(s)" (*id*. at 11). Defendant complains that his attorney did not have the specialized knowledge

needed to challenge Dr. Schlessinger's findings without the assistance of an independent examiner.

The record undeniably reflects that Defendant has had mental health issues throughout his life.   Two examiners with the BOP found Defendant competent to proceed, for different reasons.    The first opinion was largely based on the examiner's perception of Defendant's uncooperativeness and attempts to exaggerate the scope of his mental defects during testing (ECF No. 76).    The second found that Defendant had mental deficiencies and defects but that they were not severe enough to warrant a finding that he was incompetent to stand trial (ECF No. 140).    As noted above, Defendant has not identified any errors in the second BOP assessment, other than his obvious disagreement with the result.    The fact that Dr. Larson had previously found Defendant incompetent in state court proceedings was not dispositive of Defendant's mental state during the offense conduct or proceedings in this case.    Dr. Larson did not evaluate Defendant for this case.    Even if counsel had gone so far as to secure a third evaluation, if the third examiner's conclusion was contrary to Dr. Schlessinger's opinion, this would not have definitively established Defendant's incompetence to stand trial.    Defendant is not entitled to have repeated evaluations until one renders the result he believes to be correct.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

In sum, Defendant has not shown that counsel was constitutionally ineffective as to any of the issues raised in ground three of his motion or reply, and he is not entitled to relief.

Ground Four

Defendant's final ground for relief is that the district court committed plain error in failing to make factual findings regarding the identity of the individual who brandished the weapon during the offense conduct.   He cites the testimony of co-defendant Jenkins in which Jenkins admitted brandishing the weapon, although Jenkins' plea agreement reflected that it was Defendant Black had the weapon.

A claim of plain error was reviewable on direct appeal and as such is procedurally barred.   In any event, as noted above, the undersigned advised Defendant during the course of the plea proceeding that even if he was not the person who actually wielded or waved or held the gun, he could still be found guilty based on a theory of aiding and abetting (ECF No. 161 at 15).   As such, no prejudice inured from the district court's failure to make this express finding.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT

sentence pursuant to 28 U.S.C. § 2255 have merit.    Nor has he shown that an evidentiary hearing is warranted.    Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.   The motion to vacate, set aside, or correct sentence (ECF No. 180) be **DENIED**.

2.   A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 12<u>th</u> day of October 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:12cr31/MCR/EMT; 3:15cv38/MCR/EMT